## In the United States Court of Appeals
## for the Eleventh Circuit

DONALD J. TRUMP,
*Plaintiff-Appellant,*

ALINA HABBA, MICHAEL T. MADAIO, HABBA MADAIO & ASSOC., PETER TICKTIN, JAMIE SASSON, and THE TICKTIN LAW GROUP,
*Appellants,*

versus

HILLARY R. CLINTON, DEMOCRATIC NATIONAL COMMITTEE, HFACC, INC., DNC SERVICES CORP., PERKINS COIE, LLC, JOHN PODESTA, ROBERT MOOK, DEBBIE WASSERMAN SCHULTZ, FUSION GPS, GLENN SIMPSON, PETER FRITSCH, NELLIE OHR, BRUCE OHR, IGOR DANCHENKO, RODNEY JOFFE, NEUSTAR SECURITY SERVICES, NEUSTAR INC., ORBIS BUSINESS INTELLIGENCE LTD., and CHARLES DOLAN,
*Defendants-Appellees.*

On appeal from the United States District Court
for the Southern District of Florida

## APPELLANTS' REPLY BRIEF

JESSE R. BINNALL
JARED J. ROBERTS
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
(703) 888-1943

RICHARD C. KLUGH
RICHARD C. KLUGH, P.A.
40 N.W. 3rd Street, PH1
Miami, Florida 33128
(305) 536-1191

*Counsel for Appellants*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellants file this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

ABC Corporations

Aytch, Enjolique Dion

Barry, Stephen

Barzee, William R.

Berkowitz, Sean M.

Berman, Joshua Adam

Binnall, Jesse R.

Bosworth, Michael S.

Brozinsky, Noah

Ceresney, Andrew J.

Clattenburg, Rachel

Clinesmith, Kevin

Clinton, Hillary R.

Comey, James

Crenny, Kevin P.

Crowley, Shawn Geovjian

Danchenko, Igor

Democratic National Committee

DNC Services Corporation

Does, John

Dolan, Jr., Charles Halliday

Doumar, George R.A.

Eisen, Allison

Elias, Marc

Epps, Alexandra N.

Erickson-Pogorzelski, Anthony

Fassbender, Diana Marie

Feldman, Maximillian

Fels, Adam Seth

Fritsch, Peter

Fusion GPS

Garcez, Isabela M.

Garza, Kathryn E.

Gillenwater, James E.

Gonzalez, Juan Antonio

Greenberg, Gerald Edward

Habba, Alina

Habba Madaio & Associates

Harrington, Howard J.

Hart, Nancy

HFAAC, Inc.

Houlihan, Michael F.

Hunt, Patrick, Honorable

Janda, Sean R.

Joffe, Rodney

Kaplan, Roberta A.

Kastrenakes, Eleni Sevasti

Kendall, David Evan

Kiyonaga, Paul Y.

Klauber, Debra

Letter, Douglas

Levine, Jonathan Edward

Levy, Joshua

Lipshultz, Zachary Andrew

Madaio, Michael T.

Markus, David Oscar

Martinez, Roberto

McCabe, Andrew

McCarthy, John

McNichols, John Marcus

Meeks, Katherine Moran

Mestitz, Michael

Middlebrooks, Hon. Donald M.

Monsour, Jr., Franklin George

Mook, Robert E.

Muha, Christopher

Neuman, Sarah E.

Neustar Security Services

Neustar, Inc.

Ohr, Bruce

Ohr, Nellie

Olmedo-Rodriguez, Jennifer

Orbis Business Intelligence, Ltd.

Otterberg, April A.

Page, Lisa

Peacock, Benjamin

Perkins Coie, LLC

Pettis, Eugene K.

Pinto, Paola

Pittard, William

Podesta, John

Reines, Phillipe

Reilly, Wendy B.

Roberts, Jared Joseph

Rosenstein, Rod

Sainvil, Akiesha Renee Gilcrist

Salzman, Joshua M

Sasson, Jamie Alan

Schar, Reid J.

Schiff, Adam

Schultz, Deborah Wasserman

Sigler, Geoffrey M.

Simpson, Glenn

Soto, Edward

Southall, Samantha

Steele, Christopher

Stekloff, Brian L.

Strzok, Peter

Sullivan, Jake

Sussman, Michael

Terrell, Stephen R.

The Ticktin Law Group

Ticktin, Peter David

Touhey, James G.

Trout, Robert P.

Trump, Pres. Donald J.

Turner, Katherine M.

Tyrrell, Steven

United States of America

Warin, Francis Joseph

Neustar, Inc. is a wholly owned subsidiary of TransUnion, which is a publicly traded entity at NYSE:TRU

## RENEWED REQUEST FOR ORAL ARGUMENT

Multiple issues raised in this appeal are of a complex nature warranting oral argument, including regarding statutory and equitable tolling of limitations periods applicable to civil injuries suffered by the President of the United States while in office, the scope of civil RICO liability for obstruction of justice and other underlying predicate offenses, the impact of the revelations published in the Durham Report that confirmed allegations of the complaint dismissed by the district court, and issues regarding extra-record investigation and party disparagement by a trial court in proposing and then imposing sanctions. Appellants renew their request for oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . C1

RENEWED REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . i

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

REPLY ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    The District Court Erred in Dismissing the Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Dismissal premised on a "shotgun pleading" theory was procedurally and substantively infirm . . . . . . . . . . . . . . . . 1

    B.    Plaintiff properly alleged claims for relief . . . . . . . . . . . . . 5

        i.    The RICO claims . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            a.    There was an enterprise . . . . . . . . . . . . . . . . . . . 5

            b.    There were sufficient predicate acts . . . . . . . . . . 8

                1.    Obstruction of justice . . . . . . . . . . . . . . . . . 8

                2.    Wire fraud . . . . . . . . . . . . . . . . . . . . . . . . . 11

                3.    There was sufficient continuity . . . . . . . 13

            c.    There was injury to business or property . . . . . 14

        ii.    RICO conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        iii.    Injurious falsehood . . . . . . . . . . . . . . . . . . . . . . . . . 16

II.     President Trump's Claims Were Not Time-Barred . . . . . . . . . . .  17

        A.      Statutory tolling applies. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

        B.      Equitable tolling applies  . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

III.    The District Court Had Personal Jurisdiction over Orbis, Joffe,

        and Dolan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

IV.     The District Court's Sanctions Awards Were Improper . . . . . . .  26

        A.      The district court's sanctions award using its inherent

                powers was an abuse of discretion. . . . . . . . . . . . . . . . . . . .  26

                i.      Appellants did not waive any of their arguments . . .  26

                ii.     The inherent sanctions award was procedurally

                        improper. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

                        a.      There was a lack of notice . . . . . . . . . . . . . . . .  28

                        b.      The district court erred in failing to

                                provide a hearing . . . . . . . . . . . . . . . . . . . . . . .  33

                        c.      The district court improperly considered

                                outside litigation  . . . . . . . . . . . . . . . . . . . . . . .  34

                iii.    Sanctions were improper because Appellants did

                        not act in bad faith  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

iv.    Even assuming some sanctions were proper, which they were not, the award itself was improper . . . . . . 37

B.    Rule 11 sanctions to Dolan were improper . . . . . . . . . . . . 39

V.    The Durham Report Warranted Reconsideration of the District Court's Orders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

VI.    The District Judge Should Have Recused . . . . . . . . . . . . . . . . . . 44

A.    The district court had jurisdiction to disqualify, and Appellants' motion was not untimely . . . . . . . . . . . . . . . . . 44

B.    The district judge should have recused. . . . . . . . . . . . . . . 46

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . 51

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

# TABLE OF CITATIONS

**Cases**

*ADT LLC v. Vivant Smart Home, Inc.*, No. 20-cv-23391,

    2021 WL 4478932 (S.D. Fla. Sept. 30, 2021) . . . . . . . . . . . . . . . . 16

*Al-Rayes v. Willingham*, 914 F.3d 1302 (11th Cir. 2019) . . . . . . . . . . . 6

*Alix v. McKinsey & Co.*, 23 F.4th 196 (2d Cir. 2022) . . . . . . . . . . . . . . 12

*Alyeska Pipeline Service Co. v. Wilderness Society*,

    421 U.S. 240 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*American Dental Ass'n v Cigna Corp*, 605 F.3d 1283

    (11th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) . . . . . . . . . 22

*Armstead v. Allstate Property & Casualty Ins. Co.*,

    705 Fed.Appx. 783 (11th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . 29

*Baldwin Cty. Welcome Ctr v. Brown*, 466 U.S. 147 (1984) . . . . . . . . . . 21

*Bankers Mortgage Co. v. United States*, 423 F.2d 73

    (5th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Barnes v. Dalton*, 158 F.3d 1212 (11th Cir. 1998) . . . . . . . . . . . . . . . . 35

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) . . . . . . . . 12

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) . . . . . . . . . . . . . . . 30, 33

*Clinton v. Jones*, 520 U.S. 681 (1997) . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355

    (11th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Donaldson v. Clark*, 819 F.2d 1551 (11th Cir. 1987) (*en banc*) . . . 28, 31

*Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911 (11th Cir. 1982) . . . 33

*Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*,

    561 F.3d 1298 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Forrest Creek Assoc., Ltd. v. McLean Sav. & Loan Ass'n*,

    831 F.2d 1238 (4th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Gianelli v. Schoenfeld*, 2021 WL 4690724 (E.D. Cal. 2021) . . . . . . . . 18

*Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572

    (D.C. Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Griffin v. Swim-Tech Corp.*, 722 F.2d 677 (11th Cir. 1984) . . . . . . . . 41

*Hagan v. Comm'r, Ga. Dep't of Corr.*, No. 22-12180,

    2023 WL 5621895 (11th Cir. Aug. 31, 2023) . . . . . . . . . . . . . . . . 1

*In re Egidi*, 571 F.3d 1156 (11th Cir. 2009). . . . . . . . . . . . . . . . . . . . . 23

*In re Gen. Elec. Sec. Litig.*, 2021 WL 2688695

    (S.D.N.Y. Jun. 30, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*In re King's Place, Inc.*, 6 B.R. 305 (E.D. Pa. 1980). . . . . . . . . . . . . . . 15

*In re Miller*, 414 Fed. Appx. 214 (11th Cir. 2011) . . . . . . . . . . . . . . . . . 38

*In re Mroz*, 65 F.3d 1567 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 32

*In re Platinum & Palladium Antitrust Litig.*,

     61 F.4th 242 (2d Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re South Coast Oil Corp.*, 566 Fed.Appx. 594 (9th Cir. 2014) . . . . . 39

*Irwin v. Department of Veterans*, 498 U.S. 89 (1990) . . . . . . . . . . . . . 19

*Jackson v. Bank of America, N.A.*, 898 F.3d 1348

     (11th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 31, 33, 34

*Jallali v. U.S. Funds,* 573 Fed.Appx. 915 (11th Cir. 2014) . . . . . . . 44, 48

*Johnson v. 27th Avenue Caraf, Inc.*, 9 F.4th 1300

     (11th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 33, 34

*Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251 (11th Cir. 2003) . . . 27

*Klapprott v. United States*, 335 U.S. 601 (1949) . . . . . . . . . . . . . . . . . 41

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) . . . . . . . . . . . . . . . . . 17

*Lewis v. Lhu*, 696 F. Supp. 723 (D.D.C. 1988) . . . . . . . . . . . . . . . . . . . 11

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988) . . 41

*Liteky v. United States*, 510 U.S. 540 (1994) . . . . . . . . . . . . . . . . . 45, 47

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . 13

*Matter of Yagman*, 796 F.2d 1165 (9th Cir. 1986) . . . . . . . . . . . . . . . 28

*Menominee Indian Tribe v. United States*, 577 U.S. 250 (2016) . . . . . 21

*Mid Atlantic Telecom., Inc. v. Long Distance Serv., Inc.,*

    18 F.3d 260 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mock v. Bell Helicopter Textron, Inc.*, 373 Fed.Appx. 989

    (11th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*National Organization for Women Inc. v Scheidler,*

    510 U.S. 249 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nezbeda v. Liberty Mut. Ins. Corp.*, 789 Fed.Appx.

    180 (11th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*NHB Advisors, Inc. v. Czyzyk*, 95 So.3d 444 (Fla. 4th DCA 2013). . . . 24

*Nixon v. Fitzgerald,* 457 U.S. 731 (1982) . . . . . . . . . . . . . . . . . . . . . . . 20

*O'Neal v. Allstate*, 2021 WL 4852222 (11th Cir. Oct. 19, 2021) . . . 33, 34

*Pension Fund Mid Jersey Trucking Indus. v. Omni Funding Grp.*,

    687 F.Supp. 962 (D. N.J. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Pinson v. JPMorgan Chase Bank*, 942 F.3d 1200 (11th Cir. 2019) . . . . 3

*Preserve Petrified Forrest Land Inves. LLC v. Renzi,*

    2013 WL 530574 (D. Ariz. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Procter & Gamble Co. v. Amway Corp.,* 242 F.3d 539

    (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Republic of Panama v. BCCI Holdings* (*Luxembourg*) *S.A.*,

    119 F.3d 935 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Reynolds v. Roberts*, 207 F.3d 1288 (11th Cir. 2000) . . . . . . . . . . . . . 33

*ripKurrent LLC v. Richard Ballard IRA LLC*,

    530 F.Supp.3d 1281 (S.D. Fla. 2021) . . . . . . . . . . . . . . . . . . . . . . . 23

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) . . . . . . . . . . . . . 26

*Rotella v. Wood*, 528 U.S. 549 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*SCA Serv., Inc. v. Morgan*, 557 F.2d 110 (7th Cir. 1977) . . . . . . . . . . 45

*Summers v. Singletary*, 119 F.3d 917 (11th Cir. 1997). . . . . . . . . . . . 45

*Summit Props. v. Hoechst Celanese Corp.*, 214 F.3d 556

    (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Tejero v. Portfolio Recovery Assoc., LLC*, 955 F.3d 453

    (5th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387

    (7th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Trump v. United States*, 144 S.Ct. 2312 (2024) . . . . . . . . . . . . . . . . . . 21

*United States v. Angelli*, 660 F.2d 23 (2d Cir 1981) . . . . . . . . . . . . . . . 6

*United States v. Bailey*, 175 F.3d 966 (11th Cir. 1999) . . . . . . . . . . . 49

*United States v. Blackwood,* 768 F.2d 131 (7th Cir. 1985). . . . . . . . . . 6

*United States v. Brown,* 555 F.2d 407 (5th Cir. 1977) . . . . . . . . . . . . . 5

*United States v. Carey*, 929 F.3d 1092 (9th Cir. 2019) . . . . . . . . . 46, 47

*United States v. Chafin,* 808 F.3d 1263 (11th Cir. 2015) . . . . . . . . . . . 8

*United States v. Church*, 955 F. 2d 688 (11th Cir. 1992) . . . . . . . . . . 16

*United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993) . . . . . . . . . . 44, 45

*United States v. Cotton*, 2006 WL 2927675 (E.D. Mich. 2006) . . . . . . . 9

*United States v. Dennis*, 786 F.2d 1029 (11th Cir. 1986) . . . . . . . . . . 26

*United States v. Grubb*, 11 F.3d 426 (4th Cir. 1993) . . . . . . . . . . . . . 6

*United States v. Hawkins*, 185 F.Supp.3d 114 (D.D.C. 2016) . . . . . . 8, 9

*United States v. Holland*, No. 22-14219, 2024 WL 4284225

(11th Cir. Sept. 25, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Kelly*, 888 F.2d 732 (11th Cir. 1989) . . . . . . . . . . . . 34

*United States v. Long*, 651 F.2d 239 (4th Cir. 1981) . . . . . . . . . . . . . . 6

*United States v. Mendoza*, 468 F.3d 1256 (10th Cir. 2006) . . . . . . 47, 48

*United States v. Perkins*, 787 F.3d 1329 (11th Cir. 2015) . . . . . . . . . 48

*United States v. Ronda*, 455 F.3d 1273 (11th Cir. 2006) . . . . . . . . . . 10

*United States v. Ronga*, 682 Fed.Appx. 849 (11th Cir. 2017) . . . . . . . 10

*United States v. Smith*, 2001 WL 1568851 (N.D. Ill. 2006) . . . . . . . . . 9

*United States v. Stinson*, 729 Fed.Appx. 891 (11th Cir. 2018) . . . . . . 39

*United States v. Straub*, 508 F.3d 1003 (11th Cir. 2007) . . . . . . . . . . . 26

*United States v. Sutherland*, 656 F.2d 1181 (5th Cir. Sept. 25, 1981) . 5

*United States v. Veal*, 153 F.3d 1233 (11th Cir. 1998. . . . . . . . . . . . . 8

*United States v. Williams,* 571 Fed.Appx. 887 (11th Cir. 2014) . . . . . . 8

*United States v. Wong*, 575 U.S. 402 (2015) . . . . . . . . . . . . . . . . . . . . 20

*United Techs. Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009). . . . . . . 24

*Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291 (11th Cir. 2018) . . 2, 4, 36

*Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958

    (11th Cir. 2016) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wallace v. Kato*, 549 U.S. 384 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Worldspan Marine Inc. v. Comerica Bank*, No. 18-cv-21924,

    2022 WL 16701245 (S.D. Fla. Oct. 15, 2022) . . . . . . . . . . . . . . . 35

*Young v. United States*, 535 U.S. 43 (2002). . . . . . . . . . . . . . . . . . . . . 20

**Statututory and Other Authority**

U.S. Const., Art. III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

15 U.S.C. § 16(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

18 U.S.C. § 1512(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

18 U.S.C. 1961(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

18 U.S.C. § 1965(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

28 U.S.C. § 455. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 45, 49

28 U.S.C. § 455(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

28 U.S.C. § 455(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

28 U.S.C. § 455(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

28 U.S.C. § 1927. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Fed.R.Civ.P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 16

Fed.R.Civ.P. 9(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed.R.Civ.P. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29, 30, 31, 32

Fed.R.Civ.P. 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed.R.Civ.P. 60(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Fed.R.Civ.P. 60(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 42

Fed.R.Crim.P. 42(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

S.D.Fla.L.R. 7.1(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# REPLY ARGUMENT

## I. THE DISTRICT COURT ERRED IN DISMISSING THE AMENDED COMPLAINT.

### A. Dismissal premised on a "shotgun pleading" theory was procedurally and substantively infirm.

The record refutes Appellees' contention that the district court did not base dismissal on shotgun pleading grounds. The district court dismissed the complaint with prejudice "[f]or the foregoing reasons," DE:267:64, which included its conclusion that its was a "quintessential shotgun pleading" that commits "mortal sin." *Id.* at 7–8; *see also* DE:267:8 (analyzing Count XIV as exemplifying shotgun pleading infirmity of complaint); DE:267:62 (analyzing Count X as "the high-water mark of shotgun pleading and is accordingly dismissed"). The ensuing orders imposing sanctions and denying Rule 60(b) relief further confirm reliance on shotgun-pleading grounds. DE:343:5–6, 12, 15 (order denying motion for indicative ruling under Fed.R.Civ.P. 60(b) repeatedly specifying shotgun-pleading infirmity of Amended Complaint as basis both for denying relief and imposing sanctions).

The district court's reliance on alternate grounds to dismiss is inadequate to remedy its failure to afford Plaintiff a requisite opportunity

1

to resolve the shotgun-pleading deficiency. Appellees rely on two inapposite, non-binding cases. In *Hagan v. Comm'r, Ga. Dep't of Corr.*, No. 22-12180, 2023 WL 5621895 (11th Cir. Aug. 31, 2023), dismissal of the complaint with prejudice was exclusively on a merits basis. *Id.* at *6 ("district court expressly chose not to dismiss Plaintiff's complaint on shotgun pleading grounds"; reiterating requirement that district court must afford plaintiff a chance to amend the complaint before dismissing with prejudice on shotgun pleading grounds). In *Nezbeda v. Liberty Mut. Ins. Corp.*, 789 Fed.Appx. 180 (11th Cir. 2019), the Court stated: "We agree that a district court generally must permit a pro se plaintiff to amend his or her complaint at least once before sua sponte dismissing claims on shotgun pleading grounds." *Id.* at 183 (citing *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018)). In *Nezbeda*, dismissal with prejudice on the alternative ground that the complaint was a shotgun pleading was effectively moot where the appellants failed "to challenge the district court's conclusion that all of their federal claims are frivolous." 789 Fed.Appx. at 183. By contrast here, Plaintiff has presented multiple challenges to the district court's alternative bases for dismissal on the merits. To the extent the district court's dismissal grounds are unclear, a remand for clarification is warranted.

Defendants do not contest that their motions to dismiss failed to challenge the original complaint as a shotgun pleading, apart from an ambiguous footnote, pertaining only to the limited claims against defendant Neustar, which was not made a basis for dismissal in the text of the motion and was never joined in by any other defendant. Nor did any defendant agree with such a shotgun-pleading argument or request by Neustar as to the Amended Complaint. The defendants presumably did not ask for, because they did not want, a shotgun-pleading dismissal. Even as to the vague footnote reference to limited claims against Neustar, this Court has recognized that arguments made only in footnotes are waived. *See Pinson v. JPMorgan Chase Bank*, 942 F.3d 1200, 1209 n. 5 (11th Cir. 2019) (claim raised in footnote deemed abandoned); *Mock v. Bell Helicopter Textron, Inc.*, 373 Fed.Appx. 989, 992 (11th Cir. 2010)). Neustar's rote mention of the doctrine in a footnote that did not address core claims against all other defendants and was expressly isolated from any other defendants' motions, nor even mentioned by any other defendant below, was not a basis for the sua sponte action by the district court, much less fair notice to Plaintiff that any of the defendants was actually raising such a ground for relief.

Defendants' reliance on *Jackson v. Bank of America, N.A.*, 898 F.3d 1348 (11th Cir. 2018), is misplaced. The Court in *Jackson* reaffirmed that "[i]n dismissing a shotgun complaint for noncompliance with Rule 8(a), a district court must give the plaintiff 'one chance to remedy such deficiencies.'" *Id.* at 1358 (citing *Shabanets*, 878 F.3d at 1295). Next, the Court recognized that the plaintiffs had "fair notice" of the shotgun-pleading deficiency, where the defendants had "moved for a more definite statement on the ground that the complaint was a shotgun pleading" and "fully explained the complaint's defects;" further, the plaintiff failed to comply with a court order to file a more definite statement. *Id.* at 1354, 1358.

The district court's reliance on alternative bases for dismissal does not remedy the legal error in depriving Plaintiff the requisite opportunity to correct the technical shotgun-pleading deficiencies in accordance with this Court's requirements. The district court's conclusion that granting leave to amend would be "futile," DE:267:64, regardless of any technical pleading deficiencies, was improper where Plaintiff's claims for relief premised on RICO, injurious falsehood, and malicious prosecution were adequately pled.

### B. Plaintiff properly alleged claims for relief.

#### i. The RICO claims.

##### a. There was an enterprise.

Defendants contend they are somehow immune from RICO liability because they were part of a campaign initially organized to elect Defendant Clinton as President of the United States and could not therefore qualify as a RICO enterprise. This argument is not only contrary to the plain language of the RICO statute itself but also to an unbroken line of decisional authority rejecting this contention.

First, under RICO, the term "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact, although not a legal entity." 18 U.S.C. § 1961(4). Appellees' argument that a political campaign, a group of individuals associated in fact for political purpose, or any government or quasi-governmental agency cannot qualify as a RICO enterprise contradicts the statute. *See United States v. Brown,* 555 F.2d 407 (5th Cir. 1977) (Macon, Georgia police department qualified as RICO enterprise); *United States v. Sutherland*, 656 F.2d 1181 (5th Cir. Sept. 25, 1981) (term "enterprise" under § 1961(4), was broad enough to include municipal court, a part of city government). *See also United States v.*

*Grubb*, 11 F.3d 426 (4th Cir. 1993) (state court judge's office was an enterprise for RICO purposes); *United States v. Blackwood,* 768 F.2d 131 (7th Cir. 1985) (county circuit court qualified in RICO prosecution of police officer); *United States v. Long*, 651 F.2d 239 (4th Cir. 1981) (state senate office qualifies under § 1961(4)); *United States v. Angelli*, 660 F.2d 23, 33 (2d Cir 1981) (recognizing "clear congressional intent that RICO be interpreted to apply to activities that corrupt public governmental entities").

This Court rejected Appellees' argument in *Al-Rayes v. Willingham*, 914 F.3d 1302, 1308 (11th Cir. 2019). In *Al-Rayes*, the district court granted summary judgment for a married couple sued under RICO. Rejecting the district court's conclusion that because the couple initially associated for lawful reasons, they could not be a RICO enterprise despite their subsequent criminality, this Court held that "neither the text of RICO nor any relevant precedent requires that an association in fact enterprise consist of [individuals] who originally met for the purpose of engaging in illegal activity." *Id.* at 308. Under *Al-Rayes*, associations formed initially for legitimate purposes are not immune from RICO. *Id.*

A campaign may involve rhetoric and acts designed to discourage the opposing candidate's election. Appellees crossed any all's-fair-in-politics

6

line by engaging in RICO violations. They entered into an enterprise for the "common, unlawful goal of corruptly and wrongfully harming President Trump's political reputation, damaging his electability for the 2016 Presidential Election and subsequent elections, impeding his ability to govern effectively, and otherwise sabotaging his political and business career through deceptive, criminal and fraudulent means, including, but not limited to, falsely implicating President Trump, the Trump Campaign, and the Trump Administration as colluding with Russia." Initial-Brief:19-20 (citing DE:177:¶531).

Appellants' brief highlighted how the Amended Complaint plausibly alleged the agreement among the Appellees to pursue their illegal objectives. Initial-Brief:20. Notwithstanding Appellees' attempts to downplay these allegations, they are sufficient to establish the common illegal purpose Appellees possessed and acted upon.

The Durham Report *verifies and confirms* the common enterprise goal and the plausibility of the Amended Complaint's allegations. The district court disregarded the requirement to accept the well-pled allegations as true and then discounted the Report's confirmation of those allegations. Rather, the district court erroneously presumed the lack of veracity of those allegations, referring to them as incredible. The Durham

Report makes it clear that the allegations are more than credible. The district court erred by not taking the allegations as true on their face.

### b. There were sufficient predicate acts.

### 1. Obstruction of justice.

Defendants contend that, contrary to the Amended Complaint's allegations, a statement made to mislead a law enforcement officer is not actionable as obstruction of justice under 18 U.S.C. § 1512(b)(3). However, this Court has ruled that § 1512(b)(3)'s language is broad and encompasses law enforcement officers such as state investigators. *United States v. Veal*, 153 F.3d 1233, 1246 (11th Cir. 1998); *see also United States v. Chafin,* 808 F.3d 1263, 1273–74 (11th Cir. 2015) (applying *Veal*). *United States v. Williams,* 571 Fed.Appx. 887, 890-91 (11th Cir. 2014), cited by Defendants, recognizes that a defendant's actions in that case—to mislead a third party about an investigation—sufficed to establish a claim. The remaining case law cited by Defendants consists of out-of-circuit decisions with neither binding nor persuasive effect. And Appellees fail to mention other out-of-circuit decisions reaching contrary results.

There are at least three district courts that have held that a pertinent false statement made directly to a federal law enforcement officer is a violation of 18 U.S.C. 1512(b)(3). *See United States v.*

*Hawkins*, 185 F.Supp.3d 114, 125 (D.D.C. 2016) (rejecting, in sentencing guidelines cross-referencing analysis, defendants' argument that § 1512 (b)(3) cannot be violated by directly misleading federal law enforcement officers, and must somehow be done through a third-party); *United States v. Cotton*, 2006 WL 2927675 (E.D. Mich. 2006) (denying motion to dismiss § 1512(b)(3) charge and finding that misleading conduct directed at federal law enforcement officers alleged a violation of the statute); *United States v. Smith*, 2001 WL 1568851 (N.D. Ill. 2006) (applying guidelines cross-referencing provisions and deciding that false statement to a federal officer (FBI agent) violated section 1512(b)(3)

Defendants appear to contend that certain actions cannot be imputed vicariously and that every individual or entity involved must be shown to have personally acted as a principal in a RICO predicate act. But this Court has held instead that aiding and abetting liability—which applies even absent conspiratorial vicarious liability—will suffice. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1410 (1994) ("One who aids and abets two predicate acts can be civilly liable under RICO.").

The Amended Complaint alleges that Defendant Steele participated in the RICO enterprise. Clearly, Steele's actions are alleged as those of the enterprise, including in presenting the bogus Steele Dossier to the

federal government. *See United States v. Ronda*, 455 F.3d 1273, 1290 (11th Cir. 2006) ("The fabrication of evidence to mislead federal investigators violates § 1512(b)(3)."); *United States v. Ronga*, 682 Fed.Appx. 849, 855 (11th Cir. 2017) (noting that § 1512(b)(3) "criminalizes attempts to provide misleading information or inhibit truthful information from being transferred"); *see also* 18 U.S.C. 1515(a)(3)(A),(C),(D) ("[M]isleading conduct" is defined to include "knowingly making a false statement" and "knowingly submitting or inviting reliance on a writing or recording that is false, forged, altered, or otherwise lacking in authenticity … [or] other object that is misleading in a material respect."). Additionally, the Amended Complaint alleges that Defendant Sussmann gave false Alfa Bank information to both the FBI and the CIA. *See* Durham Report:16-17, 267–70.

Moreover, the relevant actions of the Defendants were plausibly alleged to be, indeed shown highly likely to have been, coordinated in multiple ways in a literal *campaign* to bring effect to the tortious conduct, with each participant, not just Steele, Dolan, and Sussman, taking coordinated action on behalf of the entire enterprise as alleged at great length in the Amended Complaint. *See* Initial-Brief:33–34 (citing DE:177).

## 2. Wire fraud

Contrary to the Defendants, Plaintiff's allegations meet the specificity requirement of Fed. R. Civ. P. 9(b). The Amended Complaint identified 33 wire transmissions, including statements, documents, and/or misrepresentations made by each RICO Defendant as part of the enterprise's fraudulent scheme. DE:177:¶583(f), (j), (q)–(r), (u)–(y), (aa)–(bb), (ee)–(gg) (Clinton); ¶¶583(d)–(e), (dd) (DNC); ¶¶583(j)–(m) (Perkins Coie); ¶583(j) (Elias); ¶¶583(k), (m) (Sussmann); ¶¶583(a)–(c), (n)–(p), (s)–(t), (x) (Fusion GPS). Plaintiff pled each wire transmission with particularity, including specifying the time, place, and maker of each transmission.

The Amended Complaint specifies that the wire transmissions were part of a fraudulent scheme intended to interfere with Plaintiff's Presidential campaign and tarnish his electability for future elections. This fraudulent scheme involved making false statements to law enforcement and the public, which caused financial loss and damage to his reputation.

The Amended Complaint further alleges the statements were made with the requisite intent to deceive and harm Plaintiff. Under Rule 9(b), it is sufficient to plead the who, what, when, where, and how of the

allegedly false statements and then allege generally that those statements were made with the requisite intent. The Amended Complaint details the specific false statements and their context, as well as the intended harm to Plaintiff.

Moreover, Plaintiff properly alleged that the RICO Defendants sought to deprive him of property, political and/or business reputation, business opportunities, competitive position, business revenue, goodwill, and/or contractual relations. DE:177:578. These losses constitute 'deprivation of property' within the context of a wire fraud claim. *See, e.g., Mid Atlantic Telecom., Inc. v. Long Distance Serv., Inc.,* 18 F.3d 260, 264 (4th Cir. 1994) ("lost customers and lost revenue"); *Procter & Gamble Co. v. Amway Corp.,* 242 F.3d 539, 565 (5th Cir. 2001) ("injuries to competitive position") (citing *Summit Props. v. Hoechst Celanese Corp.*, 214 F.3d 556, 561 (5th Cir. 2000)); *Alix v. McKinsey & Co.*, 23 F.4th 196, 204–06 (2d Cir. 2022) (loss of potential clients and contractual relations is cognizable RICO injury); *Lewis v. Lhu*, 696 F. Supp. 723, 727 (D.D.C. 1988) (reputational damages); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649–50 (2008) ("lost valuable liens"; misrepresentations about a rival business to the latter's customers and suppliers, resulting in financial loss, constitutes pattern of mail fraud).

The Amended Complaint properly alleges Plaintiff was the object of the wire fraud and was deprived of money or property. *See* Initial-Brief:28-29 ("while [Appellees] transmitted the specified fraudulent statements to the media and law enforcement, [President Trump] was their target. [President Trump's] loss was thus a foreseeable result of someone's reliance on the misrepresentation.").

### iii. There was sufficient continuity.

Appellants properly pled and raised the continuity component. And few efforts have been as sustained and continuous as maintaining and the false, fraudulent efforts alleged in the Amended Complaint. Defendants do not dispute that Defendant Clinton is *still* selling her pertinent book, with multiple book-tour stops in the period leading up to the present election, reflecting continuity, and gains to Defendants, from the predicate acts that deprived Plaintiff of money and property.

Nor do Defendants dispute that the wire fraud claim encompasses years of wrongdoing—commencing May 14, 2016, when Fusion GPS began deceiving a Slate journalist, Franklin Foer, into writing an article about the purported, and debunked, Trump-Alfa Bank connection (the subject of a Clinton press release and numerous misleading Clinton tweets), DE:177:¶583(a), and continuing through February 16, 2022, when

Defendant Clinton furthered the enterprise's fraudulent scheme by tweeting that Plaintiff was trying to invent a "fake scandal" to distract from "real ones." DE:177:¶583(gg).

As alleged in the Amended Complaint, the RICO Defendants' endeavors to work with others to continue the core obstructions of justice form predicate acts and demonstrate the continuing nature of their actions and enterprise's goals.

### c.    There was injury to business or property.

Defendants adequately alleged causation, specifying nine different ways in which the investigations harmed Plaintiff. Initial-Brief:35-36.

At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice to overcome a motion to dismiss. "We presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).[1]

---

[1]  *Lujan* addressed Art. III standing issues. *Id.* at 560, *et seq.* Under RICO, injury is often referred to as a standing requirement. *See National Organization for Women Inc. v Scheidler,* 510 U.S. 249*,* 255-56 (1994).

### ii.   RICO Conspiracy.

Clinton posits two meritless arguments to justify dismissal of Plaintiff's RICO conspiracy claim: (1) that Plaintiff's factual allegations for substantive RICO were lacking, rendering the RICO conspiracy claim inadequate; and (2) that Plaintiff must allege an illegal agreement to violate a substantive provision of the RICO statute. Main-Answer-Brief:53.

First, Plaintiff has alleged sufficient facts demonstrating that the defendants are civilly liable under RICO's substantive prohibitions. However, even if the district court correctly decided (and it did not) that Plaintiff inadequately alleged a substantive civil violation by some defendants, that does not foreclose his ability to successfully assert a civil RICO conspiracy claim. *See, e.g., American Dental Ass'n v Cigna Corp*, 605 F.3d 1283, 1294 n.6 (11th Cir. 2019) (failure to state substantive RICO claim does not mean RICO conspiracy claim necessarily fails where there are additional allegations regarding the conspiracy). Here, the additional allegations regarding the RICO conspiracy sufficed.

Second, a plaintiff "can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *American Dental Ass'n*, 605 F.3d at 1293. A plaintiff

need not offer direct evidence of a RICO agreement.  The existence of the conspiracy "may be inferred from the conduct of the participants." *Republic of Panama v. BCCI Holdings* (*Luxembourg*) *S.A.*, 119 F.3d 935, 950 (11th Cir. 1997) (citing *United States v. Church*, 955 F. 2d 688, 695 (11th Cir. 1992)).

### iii.   Injurious Falsehood.

Plaintiff adequately alleged damages, including special damages, premised on economic harm.  The strict approach to pleading special damages urged by Defendants has been rejected by courts as contrary to the Federal Rules.  This is because unlike Fed.R.Civ.P. 9(b), which requires allegations to be made with particularity, Rule 9(g), which governs pleading special damages, contains no such requirement.

In *ADT LLC v. Vivant Smart Home, Inc.*, No. 20-cv-23391, 2021 WL 4478932, at *3 (S.D. Fla. Sept. 30, 2021), a plaintiff's allegation of "lost sales, profits, and goodwill" was ruled sufficient to plead special damages. . "[R]ule 9(g) merely requires that special damages be 'specifically stated,' not that they be stated 'with particularity' as is required of allegations of fraud and mistake under Rule 9(b)... ." *Id.  Accord In re King's Place, Inc.*, 6 B.R. 305, 309 (E.D. Pa. 1980).  This standard, arising from the plain

language of Rule 9(g), applies to the allegations of special damages by Plaintiff here.

## II.  PRESIDENT TRUMP'S CLAIMS WERE NOT TIME-BARRED.

### A.  Statutory tolling applies.

Appellees present a two-pronged, unfounded argument in defense of the district court's erroneous ruling that the limitations period for initiating a civil RICO action was not statutorily-tolled here: first, that despite the Clayton Act's four-year statute of limitations, adopted as the RICO civil limitations period, the Act's tolling provisions found in 15 U.S.C. § 16(i) should somehow not be incorporated into RICO; and second, that even if the tolling provisions are imported, the government never instituted parallel *RICO* proceedings to trigger them.   Main-Answer-Brief:22.

First, although only a few courts have directly confronted the question, the majority of those have rejected Appellees' non-incorporation argument.  *See, e.g., Pension Fund Mid Jersey Trucking Indus. v. Omni Funding Grp.*, 687 F.Supp 962, 963 (D. N.J. 1988) ("There is a clear line of authority which requires that where a statute of limitations is borrowed, the tolling and suspension provisions which are part of the statute must likewise be applied.") (citing cases); *accord Preserve Petrified Forrest Land*

*Inves. LLC v. Renzi,* 2013 WL 530574 (D. Ariz. 2012); *Gianelli v. Schoenfeld*, 2021 WL 4690724 (E.D. Cal. 2021).

Another compelling reason to reject Appellees' argument is that the Supreme Court has been willing to borrow from other aspects of the Clayton Act statute of limitations—in addition to its four-year time limit—in addressing other RICO statute-of-limitations issues, adopting Clayton Act analysis in determining when a civil RICO claim accrues for statute-of-limitations purposes. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 188 (1997) (rejecting last predicate act rule as contrary to Clayton Act); *Rotella v. Wood*, 528 U.S. 549, 554 (2000) (rejecting injury-and-pattern discovery rule; explaining under Clayton Act's accrual rule, "generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business"); *see also Klehr*, 521 U.S. at 201 (Scalia, J., concurring in part and concurring in the judgment) (when Supreme Court adopts "a statute of limitations from an analogous federal cause of action, we adopt it in whole with all its accoutrements").

Section 16(i)'s express provision for tolling requires only that a prior proceeding be "based in whole or in part on any matter complained of" in the instant proceeding. A "private plaintiff is not required to allege that

the same means were used to achieve the same objectives of the same conspiracies by the same defendants … [r]ather, effect must be given to the broad terms of the statute itself—based in whole or in part on any matter complained of." *Leh*, 382 U.S. at 59 (need only show "matters complained of in the government suit bear a real relation to the private plaintiff's claim for relief"); *Minn. Mining*, 381 U.S. at 323 (Section 16(i) "provides for tolling as long as the private claim is based in any part on any matter complained of in the government proceedings.").

In this case there were at least four distinct proceedings instituted that were based on a theory similar to Plaintiff's RICO claims. Each of those actions and the reasons why they are "based in whole or in part on any matter complained of in the instant proceeding" and "bear a real relation" to the RICO claims brought in this case are elucidated in meaningful detail in Appellants' brief. Initial-Brief:51–57.

## B. Equitable tolling applies.

Appellees' brief fails to present any persuasive argument why either equitable tolling—given the unique responsibilities of President Trump in discharging his constitutional duties and historically-unprecedented events occurring during his term—or the pendency of government enforcement actions do not operate to toll the statute of limitations.

Appellees do not dispute that statutes of limitations are customarily subject to equitable tolling. *Young v. United States*, 535 U.S. 43, 49-50 (2002); *Irwin v. Department of Veterans*, 498 U.S. 89, 95 (1990). Nor do they contend the Clayton Act's four-year limitations period, incorporated into RICO by case law, is not subject to equitable tolling. *United States v. Wong*, 575 U.S. 402, 413–14 (2015) (citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 559 (1974)).

Instead, Appellees' principal argument is that there is no "special" test for equitable tolling based on the identity of a particular litigant. Main-answer-Brief:18 (citing *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (*en banc*) (establishing general test for equitable tolling; rejecting special test based on a particular litigant)). This argument is misplaced.

First, in *Villareal*, the Court was considering whether a departure from the standard test was appropriate, and that is simply inapposite here, where Appellants have argued that President Trump met the standard test. Second, Appellees' argument mischaracterizes the arguments as being about a "particular litigant," such as the plaintiff in *Villarreal*, whose argument for a special test was rejected as contrary to the duty of the federal courts not to circumvent the general test "out of a

vague sympathy for particular litigants." 839 F.3d at 971 (citing *Baldwin Cty. Welcome Ctr v. Brown*, 466 U.S. 147, 152 (1984)). This is not the case here. Instead, the arguments are about an office held by only 46 individuals over the course of this nation's history, each of whom, as the Supreme Court recognized, has unique constitutional responsibilities and obligations. *See Nixon v. Fitzgerald,* 457 U.S. 731, 749 (1982). And, as the Court reaffirmed this past term, Presidents occupy a unique position in the constitutional framework and certain exceptions must be made because of that position. *Trump v. United States*, 144 S.Ct. 2312, 2319 (2024). As explained more fully in Appellants' initial brief, the unique position in which President Trump was placed necessitated equitable tolling.

Although Appellees may be correct that equitable tolling is a "rare" remedy, that notion was fully addressed in Appellants' initial brief. *See* Main-Answer-Brief:18 (citing, *inter alia*, *Wallace v. Kato*, 549 U.S. 384, 396 (2007)); *see also* Initial-Brief:44-50.

Appellees ignore the arguments of the initial brief, and instead revert to the flawed reasoning the district court employed in considering *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997). While *Jones* rejected a categorical rule for staying an action against the President during his term, the Supreme Court acknowledged that "the high respect owed to the

office of the Chief Executive ... should inform the conduct of the entire proceeding," stressing that whether a specific case warrants exceptional treatment is more appropriately the subject of the exercise of traditional discretion than an interpretation of the Constitution. 520 U.S. at 706–07. Rather than foreclosing equitable tolling, *Jones* simply requires a case-by-case analysis akin to that presented in President Trump's initial brief.

As did the district court, Appellees posit that President Trump's other litigation forecloses equitable tolling. Their only argument in support reveals their own confusion about how "the 'potential for constitutional confusion' was an 'exceptional circumstance.'" Main-Answer-Brief:19–20. *See* Initial-Brief:46-47. Appellants explained that each of the suits identified was not personal in nature, but initiated to protect the interest of the *Office* of the President.

Finally, Appellees argue that in the context of equitable tolling, the impediment to filing an action must be external to the individual who delayed in filing the suit. Main-Answer-Brief:20-22 (citing *Menominee Indian Tribe*, 577 U.S. at 256–57). However, the *Menominee* Court explained that this requirement only means that the party seeking tolling must show "that some extraordinary circumstance stood in his way." *Id.* Here, President Trump's prioritizing his virtually around-the-clock

responsibilities on taking office as President of the United States—including during the pandemic—rightfully subsumed his attention to personal matters. A presidential decision to put constitutional duties and obligations to the country first—making such duties alone the "extraordinary circumstance[s] [that] stood in his way"—is sufficient to meet requirements for application of the equitable tolling doctrine.

## III. THE DISTRICT COURT HAD PERSONAL JURISDICTION OVER ORBIS, JOFFE, AND DOLAN.

Defendants do not dispute that 18 U.S.C. § 1965(b) provides nationwide RICO jurisdiction. Defendant Orbis's claim on appeal that it was not served pursuant to RICO's nationwide service provision was not raised in its motion to dismiss, and thus has been waived. *See* DE:260:7–12 (Orbis's motion to dismiss, contending merely that general jurisdiction was lacking because it was not "at home" in Florida and did not purposely avail itself of Florida's benefits). Rather than argue that RICO's nationwide service provision is inapplicable to it, Orbis untimely asserted the argument for the first time in a reply memorandum on its motion to dismiss. DE:266:2. Arguments presented for the first time in a reply memorandum "are deemed waived." *ripKurrent LLC v. Richard Ballard IRA LLC*, 530 F. Supp.3d 1281, 1297 (S.D. Fla. 2021) (citing *In re*

*Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009)); *see also Rankin v. Celebrity Cruises, Ltd.*, 489 Fed.Appx. 362, 362 n.1 (11th Cir. 2012) ("[A]rguments which are first raised in a reply brief are deemed waived.").

It was therefore appropriate for the district court, as it did, to disregard such arguments in its dismissal order. DE:267:17. The district court concluded there was no personal jurisdiction under RICO because it found (incorrectly) that President Trump's RICO claim failed to state a claim. *Id.* Defendants appealed on that ground. Additionally, while Orbis claims it does not transact any business in the United States, this is belied by the Durham Report, which notes that Orbis paid Defendant Danchenko through a New Jersey-based company. Durham-Report:128. In light of both RICO's service provision and Orbis's contacts with the United States, Orbis's personal jurisdiction arguments fail.

Defendants Dolan, Joffe, and Orbis further challenge personal jurisdiction as improper under Florida's long-arm statute. This challenge is meritless. Given that each of these defendants is properly alleged to have engaged in a RICO conspiracy, they are subject to personal jurisdiction in Florida. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281 (11th Cir. 2009) (Florida's "long-arm statute can support personal jurisdiction over any alleged conspirator where any other co-conspirator

commits an act in Florida in furtherance of the conspiracy."); *NHB Advisors, Inc. v. Czyzyk*, 95 So.3d 444, 448 (Fla. 4th DCA 2013) (same).[2]

Orbis's claim that Plaintiff did not adequately plead conspiracy is unsupported, where the Amended Complaint alleges, inter alia, that: Orbis and its owner, Defendant Steele, were central to the RICO scheme, Defendant Elias authorized the retainer of Orbis, and selected it because Steele "was desperate that Donald Trump not get elected," and because Orbis had since 2011 contracted with Defendant Danchenko, with linkage to Dolan, and his ties to the Clinton campaign. DE:177:¶94-98. *See also* DE:177:¶¶104, 158, 169, 174, 216, 227-28, 272-73, 792 (alleging Orbis's participation in the conspiracy, in multiple conspiratorial actions pertaining to Steele Dossier, including transmitting information to the FBI, the Clinton campaign, media, and Defendant Sussman knowing it was false and unverified).

Orbis's contention on appeal that service was improper was never ruled on by the district court, which did not address whether the method,

---

[2] Conspiracy jurisdiction even applies to foreign defendants, such as Orbis. *See In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 269 (2d Cir. 2023), *cert. denied*, 144 S.Ct. 681 (2024) (finding personal jurisdiction over foreign defendants by applying "conspiracy jurisdiction" and resulting vicarious liability) (citing *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1392 (7th Cir. 1983)).

manner, or location of service of process effected on Orbis as to the RICO claims was valid. Nor did the district court address whether, even if service of process was insufficient, dismissal or quashal of any ineffective service should be granted *without prejudice*.

## IV. THE DISTRICT COURT'S SANCTIONS AWARDS WERE IMPROPER.

### A. The district court's sanctions award using its inherent powers was an abuse of discretion.

#### i. Appellants did not waive any of their arguments.

Appellants' challenge on appeal to lack of notice and hearing with respect to the sanctions was not waived. An issue is preserved for appeal by the raising of an objection that is "'sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought.'" *United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007) (quoting *United States v. Dennis*, 786 F.2d 1029, 1042 (11th Cir. 1986)).

In the district court, Appellants argued that the imposition of sanctions is a drastic remedy that 'should not be assessed lightly or without fair notice and an opportunity for a hearing on the record.'" DE:297:7 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)).

Appellants included a separately-titled section in their opposition to sanctions outlining their request for a hearing. *Id*. While Appellants' request for a hearing was made in the context of 28 U.S.C. § 1927, Appellants also generally reserved their right to provide expert testimony at a later date. *Id*. This satisfied S.D.Fla.L.R. 7.1(b)(2), which allows for a hearing request within an opposition containing a separately-titled section. Both the district court and Defendants were plainly apprised that the lack of notice of potential sanctions and a hearing was at issue.

Moreover, even were the Court to find that Appellants did not properly raise arguments as to fair notice or a hearing, such arguments should be considered on appeal where "the interest of substantial justice is at stake" or the "issue presents significant questions of general impact or of great public concern."*Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360–61 (11th Cir. 1984); *see also United States v. Holland*, No. 22-14219, 2024 WL 4284225, at *7 (11th Cir. Sept. 25, 2024) (issues of governing law remain reviewable on appeal).

The lack of notice and hearing are issues that present "significant questions of general impact or of great public concern." *Id*. Litigants generally should be entitled to know how much notice they will be given or whether they will be entitled to a hearing before imposition of nearly $1

million in sanctions. If to any extent Appellants did not properly identify the issues of notice or failure to be heard below, the questions are of such public importance that it would be prudent for this Court to rule on them.

### i. The inherent sanctions award was procedurally improper.

### a. There was a lack of notice.

Appellees next argue, erroneously, that there was sufficient notice, and a hearing was unnecessary. Appellees first cite to *Donaldson v. Clark*, 819 F.2d 1551 (11th Cir. 1987) (*en banc*), to assert that Fed.R.Civ.P. 11 itself provides generic notice. Appellees ignore the rest of the holding in *Donaldson,* that "questions of whether an attorney made a good faith argument under the law or whether an attorney interposed a pleading, motion, or other paper for an improper purpose are more ambiguous and may require more specific notice of the reasons for contemplating sanctions." *Id.* at 1560. This is especially true when—as here—the court uses its inherent power to levy sanctions, requiring a higher notice standard, akin to contempt. *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003); *see also Donaldson*, 819 F.2d at 1562 (concurring opinion). Under certain circumstances courts may have to follow the procedures set forth in Fed.R.Crim.P. 42(b) when imposing Rule

11 sanctions. When the sanctions amount is grossly disproportionate to the attorney's misconduct, additional due process safeguards, parallel to those under Rule 42(b) are necessary so that they not assume the character of a criminal fine. *Matter of Yagman*, 796 F.2d 1165, 1180–81 (9th Cir. 1986). Appellees next cite *Johnson v. 27th Avenue Caraf, Inc.*, 9 F.4th 1300, 1306–07 (11th Cir. 2021), seemingly for the premise that Appellants' opportunity to oppose Appellees' sanctions motion constituted sufficient notice. In *Johnson*, however, the notice went far beyond a simple opportunity to oppose a motion for sanctions and was afforded in multiple instances: at a hearing notifying plaintiff and his attorney of potential future sanctions; in an ensuing show cause order; and at a subsequent show cause hearing, with sanctions not imposed until after the hearing. *Id.* at 1307, 1308, 1311. In the present case, the district court provided no such notice and no hearing.

Appellees cite *Armstead v. Allstate Property & Casualty Ins. Co.*, 705 Fed.Appx. 783, 785 (11th Cir. 2017). In *Armstead*, plaintiff's lawyer obtained photographs by trespassing at opposing counsel's office. The court issued two show-cause orders directing plaintiff's counsel to file an affidavit explaining how the photographs were obtained, and plaintiff's

counsel missed both deadlines. *Id*. No such notice was provided to Appellants here.

Instead, the district court's sanctions order, based on its inherent authority, amounted to an unwarranted "end run" around the important notice requirements of Rule 11. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 56 (1991) (warning of the danger that district court's use of inherent power to impose sanctions at end of litigation could work improper "end run" around Rule 11's notice requirements). In Appellants' case, there was no mention of sanctions until the litigation concluded. This fails to comport with applicable authority and the heightened notice requirement affirmed in *Chambers*. Appellees concede that the sanctioned party in *Chambers* "received repeated timely warnings." Main-Answer-Brief:65. Unlike *Chambers*, no such warnings were given here.

Appellees' contention that their motions to dismiss put Appellants on notice that their claims were frivolous is meritless. As this Court has explained in the bankruptcy context, a party cannot "rely on some other motion to satisfy the notice requirements" of sanctions. *In re Miller*, 414 Fed.Appx. 214, 217 (11th Cir. 2011). Instead, "motions to dismiss and motions for sanctions serve different purposes and are governed by different standards." *Id*. "Thus, many arguments which might support a

motion to dismiss would fail to provide a sufficient basis for a motion for sanctions." *Id.* at 218.  Accordingly, "the mere filing of a motion to dismiss in conjunction with the service of a motion for sanctions does not provide a party with specific notice as to which of its factual or legal claims allegedly violate" the sanctions rule. *Id.*

In addressing its concerns regarding imposition of Rule 11 sanctions this Court in *Donaldson* observed that "cautions are in order," ruling:

> Rule 11 does not change the liberal notice pleading regime of the federal courts or the requirement of Fed.R.Civ.P. 8 which demands only 'a short and plain statement of the claim.'  The rule does not require that pleadings allege all material facts, or the articulation of the legal theories upon which the case will be based. The reasonable inquiry standard of Rule 11 does not preclude plaintiff from establishing the merits of  claims through discovery. Nor is Rule 11 intended to chill innovative theories, and vigorous advocacy that bring about vital and positive changes in the law. The rule should not be used to deter potentially controversial or unpopular suits. It does not mean the end of doctrinal development, novel legal arguments or cases of first impression.  The Advisory Committee Note specifies that the rule 'is not intended to chill an attorney's enthusiasm in pursuing factual or legal theories.'

819 F.2d at 1561.

While Appellees' motions to dismiss challenged whether Appellants stated a claim, they did not put Appellants on notice that the pleadings were sanctionable.  This is especially true where the motions to dismiss

the original complaint were never ruled on, and the subsequent motions to dismiss the Amended Complaint made *no* mention of sanctions.

Contrary to Appellees, Dolan's Rule 11 motion did not provide adequate notice; it was limited to potential issues regarding claims against Dolan alone. Dolan provided the Rule 11 letter before the district court issued the dismissal order. But it gave no notice that the remaining defendants would wait until *after* reviewing the district court's order, when Appellants could take no further actions, to seek extraordinarily high sanctions at the pre-discovery phase. The district court acknowledged that, following dismissal, the time to seek Rule 11 sanctions had passed, DE:302:6, making the Dolan motion of no use to other Defendants. And as the Durham Report reveals, the vast majority of claims made by Dolan were entirely baseless and refuted.

Appellees' reliance on *Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1357–58 (11th Cir. 2018), is misplaced. In *Jackson*, the district court issued a repleading order to correct the shotgun pleading, placing the plaintiff on notice, which the plaintiff failed to heed. *Jackson is* wholly inapposite.

## 2. The district court erred in failing to provide a hearing.

This Court has recognized that under *Chambers*, "due process requires hearings and notice before the imposition of sanctions." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 n.6 (11th Cir. 2009) (citing *Chambers*, 501 U.S. at 57). A hearing was especially necessary here, where "the reputation of a law firm and its attorneys is at stake." As in *In re Mroz*, 65 F.3d 1567, 1576 (11th Cir. 1995)—finding a hearing necessary to determine whether the district court made appropriately decided on bad faith given its overall outrage with the case—a hearing here likewise would have clarified the issues.

Appellees rely on *Reynolds v. Roberts*, 207 F.3d 1288 (11th Cir. 2000), for the premise that a hearing "may not be necessary," but *Reynolds* did not involve findings of bad faith. In *Reynolds*, a party failed to comply with the court's order; a show cause order to explain that failure did not implicate bad faith. On that discrete basis, this Court found a hearing "may not be necessary. *Id*. at 1298 n.19. Here, by contrast, a finding of bad faith was required for the district court to invoke inherent sanctions powers. *See Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 918 (11th

Cir. 1982). The necessity for a finding of bad faith, especially against attorneys, required a hearing.

### 3. The district court improperly considered outside litigation.

Appellees mistakenly contend that the district court's sua sponte review of other litigation by President Trump was appropriate, including as to matters having no factual connection to this case. Appellees' case citations are importantly distinguishable. *See Johnson v. 27th Avenue Caraf, Inc.*, 9 F.4th 1300, 1313–14 (11th Cir. 2021) (district court analyzed only "similar cases brought by these men"); *O'Neal v. Allstate*, 2021 WL 4852222, *5 (11th Cir. Oct. 19, 2021) (pro se plaintiff relitigated previously-dismissed disputes); *Jackson*, 898 F.3d at 1360 n.15 (plaintiff filed same shotgun complaint with "all or most of the same boilerplate counts" against different defendants in same jurisdiction). Unlike these cases, the district court performed sua sponte research and reached inappropriate conclusions regarding various different cases President Trump is involved in other jurisdictions across the country. The cases have no similarity to—and involve different issues than—the present case. The district court's analysis of inapposite cases from other jurisdictions as

a basis for its sanctions determination is unsupported by *Johnson*, *O'Neal* or *Jackson*, and remains a blatant abuse of discretion.

### iii. Sanctions were improper because Appellants did not act in bad faith.

The district court's bad faith ruling in its sanctions order fails to comport with standards established by this Court. *See Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (finding of bad faith requires showing that attorney knowingly/recklessly raised frivolous argument, argued claim for purpose of harassing opponent, delayed or disrupted litigation, or hampered enforcement of court order).

Even if the Amended Complaint were deemed a shotgun pleading—and Appellants maintain it is not—such a deficiency does not amount to bad faith. *See Worldspan Marine Inc. v. Comerica Bank*, No. 18-cv-21924, 2022 WL 16701245, at *8 (S.D. Fla. Oct. 15, 2022) (pleading deficiencies "do not evidence bad faith or egregious conduct without a greater showing by Defendants"). Appellees did not argue in their motions to dismiss that the original complaint was a shotgun pleading; and as to the Amended Complaint, all but one Appellee effectively opted out of making such as argument. Thus, neither Appellees nor the district court provided sufficient grounds as to how "the offending pleading violates the

shotgun pleading rule so that the party may properly avoid future shotgun pleadings." *Shabanets*, 878 F.3d at 1296. It cannot be said that Appellants deliberately violated any pleading rules in a way that amounts to bad faith. Nor did Appellants' other conduct warrant a finding of bad faith.

Appellants offer the district court's erroneous finding that Appellants misconstrued or misrepresented the content of documents, and argue Appellants did not counter the district court's examples of how Appellants supposedly misstated such contents. But this argument fails. Revealing apparent biases, the district court pointed to the Mueller Report—contrary to Plaintiff's claims—as not entirely exonerating President Trump, and took issue with Appellants' allegation that the Crossfire Hurricane Investigation was not brought for a proper purpose. DE:302:15–16. Appellants addressed and rebutted those findings on both issues. Initial-Brief:67, 69.

The district court's further finding of impropriety as to the allegations against Appellee Dolan fails to comport with the record of criminal indictments, and the subsequent Durham Report, reflecting a good faith basis for claims against Dolan.

Appellees misinterpret Appellants' use of the Durham Report. The Durham Report is uniquely and highly relevant because it confirms not only the plausibility of the allegations of the Amended Complaint, but also vindicates Appellants' belief those allegations are true, thereby making sanctions wholly improper.

Appellants' merits arguments, including as argued in opposing sanctions, DE:297:3, are supported by precedent or present compelling bases for the extension of existing law. Given all of these circumstances, the district court's finding of bad faith was an abuse of discretion.

### iv. Even assuming some sanctions were proper, which they were not, the award itself was improper.

Even if this Court were to affirm the premise for the district court's sanctions as proper, the amount awarded was improper. Appellants have not waived their challenge to the fee amount on the basis that this amount lacked any legitimate nexus to the Amended Complaint and Appellees failed to mitigate any damages. Appellees base this argument on the district court's instruction that Appellants refile their objections—without making new opposition arguments—because "Plaintiff relied on an unsigned draft of Defendants' proposed fees." DE:292:1. Appellants complied and refiled. That the district court ultimately disagreed with

Appellants' arguments does not constitute waiver. Appellants even requested an evidentiary hearing if the district court required more detail, but none was granted. DE:297. Appellants' challenge to the fee amount, properly raised below, is preserved for review.

Appellees acknowledge that the district court suggested they "readopt" their previous arguments when drafting their new motions to dismiss. Main-Answer-Brief:80. While Appellants added additional facts in the Amended Complaint supporting their claims, as the district court recognized, the Amended Complaint "did not significantly alter the allegations as to most Defendants, and the arguments in support of dismissal of the Amended Complaint should therefore be substantially similar to the arguments in support of dismissal of Plaintiff's original Complaint." DE:200. Despite this, Appellees claim to have incurred nearly $500,000 in fees by essentially recasting the same arguments. Appellees provide no reasonable basis for this enormous award.

Appellees fail to acknowledge that the "American Rule" prohibits shifting attorney's fees absent a showing of fraud, delays, disruptions to proceedings, or hampering of the enforcement of a court order. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 (1975). Appellants' pursuit of this case has been confirmed by the Durham Report.

Given that vindication, in addition to Appellants' consistent accommodation of, and compliance with, scheduling requests of each defendant, and compliance with district court scheduling orders, there has been no substantiation of bad faith and the attorney's fees order was improper.

## B.    Rule 11 sanctions to Dolan were improper.

Appellants have briefed their opposition to Dolan's appellate sanctions motion, including as to Dolan's self-serving protestations of innocence that were never entitled to deference and were debunked by Durham.  While the full extent of Dolan's actions in this matter remains unresolved, Appellants had a good faith basis for allegations against him. The Durham Report confirms that good-faith basis, undermining any ground for sanctions.  *See United States v. Stinson*, 729 Fed.Appx. 891, 900 n.7 (11th Cir. 2018) ("[S]anctions may not be imposed unless a particular allegation is utterly lacking in support.").  At no stage of the proceedings have Appellants' claims been "utterly lacking in support."  *Id.* In the wake of the Durham Report, the same cannot be said of Appellees' arguments or Dolan's Rule 11 letter.

Dolan continued argument about immaterial matters—whether he is a New York resident and had a *formal* role in the Clinton

campaign—fail. Immaterial facts are an insufficient basis for Rule 11 sanctions. *See In re Gen. Elec. Sec. Litig.*, 2021 WL 2688695, at *7 (S.D.N.Y. Jun. 30, 2021) (sanctions inappropriate where errors of fact played no material role in outcome of the litigation); *Forrest Creek Assoc., Ltd. v. McLean Sav. & Loan Ass'n*, 831 F.2d 1238, 1245 (4th Cir. 1987) (Rule 11 sanctions do "not extend to isolated factual errors, committed in good faith, so long as the pleading as a whole remains 'well grounded in fact.'"); *In re South Coast Oil Corp.*, 566 Fed.Appx. 594, 596 (9th Cir. 2014) (denying sanctions because alleged mischaracterizations were either aggressive advocacy or immaterial to the merits).

As to the allegation that he was a Clinton campaign official, as the initial brief explained, Initial-Brief:78-79, Dolan was, in fact, affiliated with the Clintons, and the DNC. Combined with Dolan's overall conduct—participation in events central to the Durham Report's findings—his formal/official title was subsumed by his actual conduct. *Id.*; DE:270:4–11 (response to Dolan sanctions motion).

That the Danchenko indictment did not comprehensively include all of Dolan's involvement does not mean Appellants' allegations were made in bad faith, where the Durham Report confirms their truth or at the very least plausibility. *See generally* DE:270:11–14 (response to Dolan

sanctions motion).  An evidentiary hearing, denied to Appellants, would reasonably have confirmed the plausibility of Appellants' allegations.

Dolan asserts the patently insulting, personal attack on attorney Appellant Habba, that she file a false claim to seek fame and become an "Instagram influencer," Dolan-Joffee-Orbis-Brief:28, reveals animus consistent with allegations in the complaint.  Ms. Habba is attempting to practice law and to address harms suffered by the Plaintiff.  The attacks and sanctions were unfounded.

## V.  THE DURHAM REPORT WARRANTED RECONSIDERATION OF THE DISTRICT COURT'S ORDERS.

Contrary to Appellees, the Durham Report constitutes newly discovered evidence and entitled to at least some level of deference, particularly given its issuance in the succeeding presidential administration.  It is a corroborating document which was created after the district court's dismissal and sanctions orders, and it substantiates Appellants' claims.  Moreover, newly discovered evidence is just one of six reasons for which a court may reconsider an order.  Fed. R. Civ. P. 60(b)(2).  Importantly, a party may obtain relief from an order for "any ... reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).

The purpose of Rule 60(b)(6) is to ensure that "justice be done in light of *all* the facts.'" *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984) (quoting *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir. 1970)) (emphasis in original). The Supreme Court has explained that relief under Rule 60(b)(6) is "to accomplish justice." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988) (quoting *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949)). Failing to consider the Durham Report raises, at best, or reveals, at worst, the unreliable factual premises and assumptions underying the proceedings and rulings in the lower court. The district court's failure to gauge the factual impact of the Durham Report constituted error.

The Durham Report outlines the dynamics of Appellees' organized scheme to impugn and harm President Trump, reflecting Appellees' involvement in wrongdoing in connection with law enforcement and related investigations founded on false claims by Appellees. Contrary to Appellees' assertions, an official government report corroborating Appellants' allegations is, in fact, an extraordinary circumstance warranting relief in the interests of justice.

The Report provides bases for (1) equitable tolling based on the unique circumstances President Trump faced; (2) the merits of the RICO

claims by demonstrating the requisite elements of an open-ended continuity, RICO enterprise, and pattern of racketeering activity, predicate acts, including Appellees' misleading statements constituting both obstruction of justice and fraud, and the harm to President Trump's business and property; and (3) the merits of the injurious falsehood claim by establishing Appellees' false statements.

Appellees' contention that Appellants' initial brief did not address the district court's analysis in its order denying reconsideration is mistaken. Appellants' initial brief—consistent with word limits—engaged in a line-by-line analysis of the district court's order, showing why its determinations were incorrect and why the denial of reconsideration constituted an abuse of discretion. Initial-Brief:82–84.

The Durham Report evidences that sanctions should have never been considered—against Appellants. As the District of Columbia Circuit has held, "reconsideration under rule 60(b)(6) is proper" "[w]hen a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980). The Durham Report—the product of an official government investigation into the subject matter central to this case—reaffirms not only Appellants' good

faith, but also Appellants' legally supportable basis for the claims, demonstrating that the imposition of nearly $1 million in sanctions is "manifestly unjust."  The denial of reconsideration was erroneous and warrants reversal.

## VI.  THE DISTRICT JUDGE SHOULD HAVE RECUSED.

### A.  The district court had jurisdiction to disqualify, and Appellants' motion was not untimely.

Appellees' contention that the district court lacked jurisdiction to grant a meritorious disqualification request would call judicial proceedings into disrepute and defy the judicial duty to ensure fair, untainted proceedings.  It is a judge's duty to consider the propriety of disqualification in all proceedings before such court.

Appellees acknowledge the Tenth Circuit's ruling that 28 U.S.C. § 455 is "not jurisdictional in nature."  *United States v. Cooley*, 1 F.3d 985, 996 n.9 (10th Cir. 1993).  *Cooley* further held that, in some circumstances, disqualification may be necessary even "after a proceeding," *id.* at 992, recognizing disqualification presents a continuous, ongoing duty not limited by formalities.

Appellees' contention that the motion to disqualify was untimely because it was not brought within a reasonable time after the dismissal

order likewise fails. The appearance of impartiality was diminished exponentially by each of the two sanctions orders that followed the order of dismissal. Together, these three rulings reflected pervasive bias. Appellants promptly appealed these decisions, obviating the need to move for disqualification until the matter was remanded to the district court.

Section 455, as Appellees admit, has no timeliness requirement. "Any decision to deny disqualification based on grounds of waiver and estoppel would frustrate the purpose of [§ 455]."[3] *SCA Serv., Inc. v. Morgan*, 557 F.2d 110, 117 (7th Cir. 1977) (concluding that awaiting additional proceedings did not result in waiver). *Id.*

In *Jallali v. U.S. Funds,* 573 Fed.Appx. 915, 916 (11th Cir. 2014), the Court noted that the plaintiff did not move for recusal until eight months after the first order. In coming to this finding, this Court relied on its prior opinion in *Summers v. Singletary*, 119 F.3d 917, 921 (11th Cir. 1997*),* where the Court's primary concern was that a disqualification motion not

---

[3] While the Tenth Circuit held that § 455(a) may be waivable, *Cooley*, 1 F.3d at 996 n.9, this does not apply to § 455(b). Under § 455(b), disqualification is required if the judge has "a personal bias or prejudice concerning a party." The Rule explicitly notes that there can be no waiver of the grounds listed in subsection b of 28 U.S.C. § 455(e). The grounds for disqualification, at least as to § 455(b), are continuous regardless of the stage of the proceedings. Appellants, however, have not waived any subsection of § 455 because they promptly acted upon returning to the district court.

invalidate a fully-completed trial. No such concern is not present here. That a brief period passed between the dismissal order and the final sanctions order did not make the disqualification motion—resting largely on the sanctions findings—in any way untimely.

### B. The district judge should have recused.

The district court's barrage of unwarranted hostile comments directed toward and regarding President Trump and his former counsel eviscerated the appearance of impartiality and exposed a deep-seated bias arising from matters beyond the scope of the litigation, clearly meriting disqualification. *See Liteky v. United States*, 510 U.S. 540, 554 (1994).

The district court's sua sponte, extrajudicial research in issuing its orders—including as to former FBI Director James Comey's statements regarding Appellee Clinton preceding the 2016 election and the district court's analysis of the merits of other litigation in which President Trump is involved, despite the ongoing nature of that litigation—was improper.

Appellants cited *United States v. Carey*, 929 F.3d 1092, 1105 (9th Cir. 2019), as cautioning against the use of extrajudicial materials in other circumstances, yet Appellees suggest failing to do so in this case would have rendered the district judge mole-like, unaware of the partisan truth about the Plaintiff. Main-Answer-Brief:90. To the contrary, unlike the

district court's mere citation of an article in *Carey*, the district court here inappropriately expressed its opinions regarding its selective review of the Plaintiff's history.

As to President Trump's other litigation, the district judge did not merely mention the cases; he added his own citations beyond any the Appellees brought to his attention, assessed the merits of the cases —despite the fact they had not been fully adjudicated and remained pending—and accused President Trump of being a "bully." DE:302:24. The judge's sua sponte, extrajudicial research and gratuitous commentary reflect bias against President Trump, apart from the instant litigation.

Appellees rely on two distinguishable, non-binding decisions. *See Tejero v. Portfolio Recovery Assoc., LLC*, 955 F.3d 453, 464 (5th Cir. 2020) (search regarding other litigation did not warrant disqualification because appellants themselves directed court to view these cases); *United States v. Mendoza*, 468 F.3d 1256, 1262–63 (10th Cir. 2006) (extrajudicial search did not warrant disqualification, where judge's docket search pertained to attorney discipline for improper conduct, a subject as to which courts maintain general supervision; even so, Tenth Circuit acknowledged such a search "may suggest a vendetta"). Unlike *Tejero* and *Mendoza*, the district judge's extrajudicial search of Plaintiff's pending, unresolved cases

was undertaken sua sponte, unprompted by either party or by ongoing disciplinary proceedings. Moreover, the court's ensuing fierce attacks on President Trump's character and motivations reflect something akin to the biased "vendetta" against which the *Mendoza* court warned.

Even if adverse character judgments made by the district court were not entirely extrajudicial, recusal was warranted. In *Liteky v. United States*, 510 U.S. at 555, the Supreme Court explicitly rejected the argument that grounds for disqualification must derive from extrajudicial sources. Instead, bias and prejudice arising during the proceedings—as reflected in judicial opinions that "display a deep-seated favoritism or antagonism that would make fair judgment impossible"—support disqualification. *Id*. The district judge here went well beyond critiquing the legal propriety of Plaintiff's allegations and making "ordinary admonishments," as Appellees argue, Main-Answer-Brief:87-88, and instead exhibited abiding animus impairing the appearance of fair and unbiased judgment. *Cf. United States v. Perkins*, 787 F.3d 1329, 1342–43 (11th Cir. 2015) (district court's statements did not establish animosity where defendant engaged in dilatory and disrespectful tactics, such as deliberately talking over the judge—no such conduct by Appellants here). The district court's short-shrift dismissal of adverse findings of the Justice

Department—in the Durham Report—that at a minimum supported theories on which Plaintiff had pursued this litigation confirm the appearance of bias.

The remaining cases cited by Appellees likewise are unavailing. *United States v. Bailey*, 175 F.3d 966, 968-69 (11th Cir. 1999) (pervasive bias toward defendant not shown where judge granted many of his motions and made "special" efforts to accommodate him, and where purported remaining grounds were factually unsubstantiated); *Jallali*, 573 Fed.Appx. at 916 (district court's comments essentially documented counsel's misconduct in the litigation). Unlike these cases, the district judge attacked President Trump's character on the basis of outside matters not rooted in the instant litigation, reflecting readily-perceived hostility.

Given the district judge's insertion of his own political opinions and character attacks on President Trump, there remains a doubt as to the district court's impartiality, requiring disqualification. *See United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989) (holding that § 455 "requires judges to resolve any doubts they may have in favor of disqualification.").

## CONCLUSION

For the foregoing reasons, and those stated in Appellants' Initial Brief, Appellants respectfully request that this Court vacate the district

court's orders dismissing the Amended Complaint with prejudice, imposing sanctions, and denying disqualification, and remand the case with instructions for reassignment to another district judge.

Respectfully submitted,

Jesse R. Binnall
Jared J. Roberts
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
jared@binnall.com

RICHARD C. KLUGH, P.A.
40 N.W. 3rd Street, PH1
Miami, Florida 33128
Phone: (305) 536-1191
Fax: (305) 536-2170
rklugh@klughlaw.com

By:  *Richard C. Klugh*
      Richard C. Klugh

*Counsel for President Donald J. Trump, Alina Habba, Michael T. Madaio, Habba Madaio & Associates, Peter Ticktin, Jamie Sasson, and The Ticktin Law Group*

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 5(c)(1), as well as 11th Cir. R. 32-4, and pursuant to the Court's September 20, 2024 Order, granting an expansion of the word count to 10,000 words because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 9,987 words. Undersigned counsel certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word Perfect in 14-point Century Schoolbook font.

*Richard C. Klugh*
Richard C. Klugh

## CERTIFICATE OF SERVICE

I certify that on September 27, 2024, the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record and that requisite copies of the brief were mailed to the Court.

*Richard C. Klugh*
Richard C. Klugh